**Epifanio ALVARADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 5, 1991.

Ricardo Rodriguez, Houston, for appellant.

Luis V. Saenz, Brownsville, for appellee.

Before NYE, C.J., and SEERDEN and BISSETT[1], JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, Epifanio Alvarado, guilty of murder and also found a single enhancement paragraph to be true. The jury assessed as punishment ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals by thirteen points of error. We affirm.

Shortly after midnight, Robert Johnson heard what sounded like two gunshots coming from the Oasis club. He saw a car leave the club's parking lot and turn east on Price Road. He went to the club and saw Carlos Serrano slumped over in the front seat of a Ford Bronco, bleeding from his upper body. Officer Ortiz immediately began looking for the suspect seen leaving the Oasis. Ortiz drove past appellant and another person, Carmelo, who were walking down a road. They were about one-and-one-half miles from the Oasis. Ortiz made a U-turn and saw that they had van-

ished. He saw appellant cross the road and start to run. Ortiz caught him and found a .45 automatic in his back waistline.

Officer Garza testified that Serrano had two gunshot wounds, one to the upper left side of the upper lip and the other to the left collarbone area. He found Serrano sitting on top of a loaded .22 derringer, which was found in his "crotch area." Two spent .45 shell casings were near the Bronco's rear tire. What appeared to be a .45 caliber slug was on the floorboard. Dr. Dahm testified that the two gunshot wounds killed Serrano.

Appellant testified that prior to the incident in question, Carmelo came to his house and wanted him to ask Serrano to drop criminal charges against Marco Vela (Earlier that evening, Serrano had pressed charges against Vela for trying to steal his Bronco). Appellant agreed to talk to Serrano, and he and Carmelo drove to the Oasis. While they waited for Serrano, Carmelo gave appellant the .45. Appellant saw Serrano leave the Oasis and walk towards his Bronco. Appellant followed him, and when Serrano got into his Bronco, appellant told him that he wanted to talk to him. But Serrano allegedly threatened to kill him. Appellant said that he saw Serrano move his right hand like he was reaching for something. Appellant did not see a gun but thought that Serrano was reaching for one. Appellant shot him twice. He meant the first shot, but the second shot was allegedly accidental. He heard Carmelo call him back to their car, and they drove away. They abandoned the car and started walking.

■ By point one, appellant challenges the sufficiency of the evidence to support his conviction. In reviewing the sufficiency of the evidence, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1989).

We must take each case and review all the evidence to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime and not just a plausible explanation of the crime. *Butler*, 769 S.W.2d at 239. The charge's application portion stated, in relevant part:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of October, 1989, in Cameron County, Texas, the Defendant, Epifanio Alvarado, did intentionally or knowingly cause the death of Carlos Gonzalez Serrano, by shooting him with a deadly weapon, to wit, a firearm, or did unlawfully, with intent to cause serious bodily injury, commit an act clearly dangerous to human life that caused the death of Carlos Gonzalez Serrano, such act being shooting Carlos Gonzalez Serrano with a deadly weapon, to wit, a firearm, then you will find the Defendant guilty of Murder....

The evidence showed that appellant took a loaded .45 and followed Serrano (the deceased) to his Bronco. He saw Serrano move his right hand like he was reaching for something. Even though he never saw a weapon, he shot him twice. The appellant said he meant the first shot, but the second shot was allegedly accidental. Appellant and his friend, Carmelo, fled the scene, abandoned the car, and started walking. When appellant saw the police, he vanished and started running. The .45 used to kill Serrano was in appellant's waistline. Viewing the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

■ By point two, appellant complains that the State did not prove beyond a reasonable doubt that he did not shoot Carlos Serrano in self-defense. The State has the burden of persuasion in disproving the evidence of self-defense. That is not a burden of production, *i.e.*, one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case

beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App. 1991). Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of this evidence is solely within the jury's province, and the jury is free to accept or reject the defensive evidence. *Saxton*, 804 S.W.2d at 914. In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

■ Here, appellant confronted Serrano when he was inside of his Bronco. He admitted shooting Serrano when Serrano's right hand reached for something. He never saw a weapon, but he fired anyway. He said he meant the first shot. Afterwards, he fled and was caught about one-and-one-half miles from the scene. He still possessed the murder weapon. On the basis of these facts, we hold that a rational jury could have found beyond a reasonable doubt against appellant on the self-defense issue. *See Saxton*, 804 S.W.2d at 914.

By points three and five, appellant attacks the sufficiency of the evidence to show that the State established beyond a reasonable doubt that it was not reasonable for him to believe that he was in danger of death or serious bodily injury and that it was unreasonable for him to believe that the force which he used was immediately necessary to protect himself. The State has the burden of persuasion in disproving the evidence of self defense, and it must prove the essential elements of murder beyond a reasonable doubt. We have held herein that the State met these burdens. Appellant's testimony concerning his reason for shooting Serrano was for the jury to believe or disbelieve.

■ By point four, appellant attacks the sufficiency of the evidence to show that the

State proved beyond a reasonable doubt that it was not reasonable for a person in his situation to believe that he could have safely retreated before using deadly force. Section 9.32(2) of the Texas Penal Code provides that a person is justified in using deadly force against another if a reasonable person in the actor's situation would not have retreated.

In *Sternlight v. State*, 540 S.W.2d 704, 706 (Tex.Crim.App.1976), the court held that an instruction on the law of retreat requires the jury "in deciding the issue on self-defense to determine whether the [defendant] had the ability and opportunity to retreat considered as a part of all of the circumstances of the moment." In *Valentine v. State*, 587 S.W.2d 399, 402 (Tex. Crim.App.1979), the Court stated:

> [a] person ought to retreat, if he can do so safely, before taking human life.... By measuring the existence and extent of the retreat obligation in terms of the ordinary person in the actor's situation, it is contemplated that the factfinder will make a moral judgment on whether the defendant in a specific case ought to have retreated before threatening or using deadly force.

The factfinder is given the responsibility to determine whether appellant's failure to retreat was reasonable under the circumstances. *Hinojosa v. State*, 744 S.W.2d 319, 322 (Tex.App.—Corpus Christi 1988, pet. ref'd).

■ Here, appellant testified that after Serrano threatened to kill him, he did not leave because he was afraid that he would get shot in the back. The State's attorney asked, "But you hadn't seen anything and he [Serrano] was in the car. You could have turned around and left right there and then, right?" Appellant said, "Yes, sir." Based upon these facts, we hold that the jury could have found that a reasonable person would have retreated.

By points six through thirteen, appellant complains of errors in the court's charge on guilt/innocence. By point six, he complains that the charge did not restrict the jury's deliberations concerning the element of culpability. By points seven and eight, he complains that the instruction on the law of self-defense shifted the burden of proof to him. By point nine, he complains that the charge did not apply the law to the facts concerning Serrano's verbal threats. By point ten, he complains that the charge restricted his right of self-defense because it did not instruct the jury on the proper allocation of the burden of proof concerning the duty of retreat. By points eleven and thirteen, he complains that the murder instruction preceded the self-defense instruction.

■ Concerning the element of culpability, the charge defined the word "intentional" as it is defined in § 6.03(a) of the Texas Penal Code, which provides: "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Here, the indictment required a finding of culpable mental state to both "cause the result" (the death of Serrano) AND "engage in the conduct" (shooting Serrano with a firearm). Thus, in order to secure a conviction under the charge's application portion, *supra*, which tracked the indictment, the State was required to prove both intentional or knowing conduct of the accused and intentional or knowing result of the conduct. Therefore, the penal code definition of intentional assisted the jury in its determination of guilt and did not unduly restrict appellant's defense of self-defense. Accordingly, since the indictment and the charge required a finding of a culpable mental state to engage in the conduct and cause the result, the court did not err in instructing on both. *See Hernandez v. State*, 819 S.W.2d 806 (Tex.Crim.App., 1991).

Concerning the self-defense instruction, the charge properly instructed the jury on the law of self-defense and properly applied the law of self-defense to the facts of the case. The charge also instructed the jury that: "The burden of proof in all criminal cases rests upon the State throughout the trial, and never shifts to the defendant." The charge, as a whole, placed the burden

on the State to show that any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt. The charge did not shift the burden of proof to appellant.

Concerning the complaint that the charge did not include Serrano's alleged verbal threats, when evidence is presented that the victim verbally threatened the defendant and that the defendant may have acted in self-defense, a charge on self-defense should not be restricted to only the victim's acts; verbal threats should be included as well. *Ellis v. State*, 811 S.W.2d 99, 101 (Tex.Crim.App.1991). Here, appellant testified that before he shot Serrano, Serrano verbally threatened to kill him. The instruction on self-defense allowed the jury to consider "the words or conduct, or both, of Carlos Gonzalez Serrano" in determining whether appellant acted in self-defense. We find no error.

Concerning the burden of proof on the duty of retreat, the charge defined the terms "firearm" and "deadly force," and it also instructed the jury that if they found that appellant's use of deadly force (shooting Serrano with a firearm) was immediately necessary to protect himself against Serrano's use or attempted use of unlawful deadly force, and that a reasonable person in his situation would not have retreated, then they should acquit him on the basis of self-defense. The charge informed the jury that the State had to prove its case beyond a reasonable doubt and that they could acquit appellant if they found that his use of deadly force was necessary and that a reasonable person would not have retreated. The charge properly placed the burden on the State and did not place any burden on appellant.

Concerning the murder instruction preceding the self-defense instruction, the instructions applying the law of murder to the facts of the case were followed by correct instructions concerning the law of self-defense. These instructions correctly placed on the State the burden of proving beyond a reasonable doubt that appellant had not acted in self-defense. If the charge is read as a whole, the conclusion is that the jury was instructed to find appellant not guilty unless they found that he had not acted in self-defense. The instruction to this effect is clear and unambiguous and, absent a result-oriented interpretation of the charge, there is no reason to doubt that the jury understood the charge. *Hernandez v. State*, 375 S.W.2d 285, 288 (Tex. Crim.App.1963); *Cotton v. State*, 742 S.W.2d 871, 872 (Tex.App.—San Antonio 1987, pet. ref'd); *Green v. State*, 675 S.W.2d 541, 543 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd).

By point fourteen,[2] appellant complains of the State's remarks during final summation on guilt/innocence. The State remarked:

I need to remind you that the burden of proof, this is very important, is not one hundred percent. It is not beyond a shadow of a doubt, and it's not beyond any doubt. So keep that in mind. It's what you people determine it to be, applying your common sense, your reason, your logic, and putting all of the bits and pieces together and making a decision. That's what it's about, not beyond a shadow of a doubt, not a hundred percent proof.

Later, the State again stated that its burden of proof was "not a hundred percent proof, it's not beyond a shadow of a doubt. ..." No objection was lodged to any of these remarks. Generally, a failure to object to impermissible jury argument waives any error unless the State's argument is so egregious that no instruction to disregard could possibly cure the harm. *Willis v. State*, 785 S.W.2d 378, 385 (Tex.Crim.App.1989). In making the determination of whether a statement is manifestly improper, harmful, and prejudicial, courts are to look at the record as a whole. *Willis*, 785 S.W.2d at 385. Here, the remarks were not manifestly improper, did not violate a mandatory statute, and did not inject new facts, harmful to appellant. *See Rogers v. State*, 795 S.W.2d 300, 306 (Tex.App.—Houston [1st Dist.] 1990, pet.

---

2. Point of error number twelve does not exist.

ref'd) (remarks that State is not required to present proof beyond all doubt or beyond a shadow of a doubt are lawful). We have considered all of appellant's arguments, and they are all overruled.

The trial court's judgment is AFFIRMED.